UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
HILLARY JOHNSON

                    Plaintiff

     -against-

MAGNOLIA PICTURES LLC,
3 FACES FILMS LLC, MOTTO PICTURES,
CNN FILMS, a division of TURNER
BROADCASTING SYSTEMS, INC.

                    Defendants.
-------------------------------------------------------

Civ. Action No. 18 CV 9337

COMPLAINT   JUDGE BRICCETTI

Jury Trial Demanded

      Hillary Johnson ("Plaintiff") makes this complaint against Magnolia Pictures LLC, 3 Faces Films LLC, Motto Pictures and CNN Films (collectively "Defendants") as follows:

### **PARTIES**

      1. Plaintiff Hillary Johnson is an individual residing at 31 Putnam Road, Hyde Park, NY. 12538.

      2. Defendant Magnolia Pictures LLC is a limited liability company organized under the laws of the State of Delaware with offices at 49 West 27th Street, 7th Floor, New York, NY 10001.

      3. Defendant 3 Faces Films LLC is a limited liability company organized under the laws of the State of New York with offices at 119 Payson Avenue, Apt. 6C, New York, NY 10034-2717.

      4. Defendant Motto Pictures, Inc. is a corporation organized under the laws of the State of New York with offices at 68 Jay Street, Suite 319, Brooklyn, NY 11201.

      5. Defendant CNN Films is a division of Cable News Network and Turner Broadcasting

Systems, Inc., a corporation organized under the laws of the state of Georgia, with a business address at One CNN Center, 100 International Blvd., Atlanta, GA 30303-2762.

## NATURE OF THE CASE

6. This action arises out of the unauthorized use by the Defendants of numerous audiotape recordings of interviews conducted by Plaintiff of Gilda Radner in the late 1980 (the "Taped Interviews") in the recently released motion picture film entitled *Love, Gilda.*

## JURISDICTION AND VENUE

7. This is a civil action seeking injunctive relief for the infringement of unregistered copyrighted works arising under the copyright laws of the United States, 17 U.S.C. § 101 et seq.

8. This Court has jurisdiction under 17 U.S.C. §101 et seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a), as confirmed by the U.S. Supreme Court in Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) and its progeny.

9. This Court has personal jurisdiction over the Defendants and venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) in that the Defendants conduct business in this District and many of the acts of infringement complained of herein occurred in this District.

## FACTUAL BACKGROUND

10. Starting in the spring of 1987, Plaintiff conducted numerous interviews of Gilda Radner in an effort to assist Ms. Radner write her autobiography, *It's Always Something* (the "Taped Interviews"). The story behind Plaintiff's interviews of Radner are recounted in a Rolling Stone article authored by Plaintiff, a copy of which is attached hereto as Exhibit 1.

11. Plaintiff, a professional journalist, invested significant time and effort creating

questions for the Taped Interviews and her creativity and skill as an interviewer resulted in material that contributed to the commercial success of Radner's book.

12. In view of Plaintiff's significant contributions to the Taped Interviews and the intent of Plaintiff and Radner to jointly work together to generate content for Radner's book, Plaintiff is at least a co-owner of the copyrights in and to the Taped Interviews as well as any excerpts or other derivative works making use thereof ("Derivative Works").

13. In or about the fall of 2016, the Producer of *Love, Gilda*, Lisa D'apolito, contacted Plaintiff to say she had come across the Taped Interviews in Ratner's brother's attic. D'apolito was very excited about them and wanted to do an interview with Plaintiff. Plaintiff asked for a modest sum of money and told D'apolito she would spend as much time with her as she needed, but Plaintiff never heard from D'apolito or anyone else connected with *Love, Gilda* again.

14. In or about August of 2018, Plaintiff saw a synopsis and trailer for *Love, Gilda* released by the Defendants on the Internet. The synopsis and trailer make reference to "recently discovered audiotapes" that "open up a unique window" into Radner "whose greatest role was sharing her story." Copies of the synopsis and trailer are attached hereto as Exhibit 2.

15. Based on the synopsis and trailer and the call from D'apolito, it is evident that the "recently discovered audiotapes" were used in the film and that the "recently discovered audiotapes" referenced in the synopsis and trailer for *Love, Gilda* are Plaintiff's Taped Interviews of Radner.

16. On August 10, 2018, counsel for Plaintiff wrote to Defendant Magnolia Films notifying them of Plaintiff's ownership interest in the Taped Interviews and demanding that Plaintiff "receive appropriate credit in *Love Gilda*" and "be fairly and reasonably compensated for her undeniable contribution to the film." A copy of the letter is attached hereto as Exhibit 3.

17. On September 4, 2018, counsel for Defendant 3 Faces films LLC responded refusing to provide credit or reasonable compensation.

18. On September 21, 2018, *Love, Gilda* was released by the Defendants and significant use was made of excerpts from the Taped Interviews without any credit or compensation to Plaintiff.

**FIRST CAUSE OF ACTION**
**INJUNCTIVE RELIEF**

**(All Defendants)**

19. Paragraphs 1 through 18 of this Complaint are re-alleged and restated as if fully set forth herein.

20. Plaintiff is the rightful co-owner of the Taped Interviews and Derivative Works created therefrom.

21. Plaintiff is unable to register her copyrights in the Taped Interviews and Derivative Works because the Defendants are in possession of them and have denied Plaintiff access.

22. Plaintiff's inability to access the Taped Interviews and Derivative Works is causing and will continue to cause her irreparable harm by preventing her from suing for copyright infringement.

23. Plaintiff lacks an adequate remedy at law because she is not in possession of the Taped Interviews and Derivative Works and is, therefore, unable to register her copyrights and prevent future infringement, which future infringement cannot be fully compensated or measured in money.

24. Defendants will not suffer any harm from the entry of an injunction requiring that

they give Plaintiffs access to the Taped Interviews and Derivative Works to enable Plaintiff to register her copyrights.

25. The public interest favors the protection of copyrights and therefore favors entry of a permanent injunction in favor of Plaintiff to prevent ongoing infringement.

26. Plaintiff respectfully ask the Court to inter a permanent injunction ordering Defendants to provide her access to the Taped Interviews and Derivative Works.

## SECOND CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT

27. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

28. Plaintiff is, and at all relevant times has been, the co-owner of the exclusive rights under United States Copyright Act of the unregistered copyrighted works identified herein.

29. Among the exclusive rights granted to Plaintiff under the Copyright Act is the exclusive right to reproduce and license others to reproduce all or portions of her contribution to the Taped Interviews, make excerpts and other derivative works and use them in commercial films.

29. Defendants, without the permission or consent of Plaintiff, made or caused to be made reproductions of all or significant portions of the Taped Interviews and used them in *Love, Gilda*, which is currently in movie theaters.

20.    Defendants' actions constitute infringement of Plaintiff's exclusive rights under the Copyright Act.

21.    Plaintiff is informed and believes that the foregoing acts of infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiff.

22. As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and her attorneys' fees and costs pursuant to 17 U.S.C. § 505, and a permanent injunction from the Court requiring the defendants to provide her with an appropriate credit for her contribution to the film.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in their favor:

a. Granting a permanent injunction requiring Defendants to give Plaintiff access to all of the Taped Interviews and Derivative Works so she can register her copyrights;

b. Granting a permanent injunction ordering Defendants to provide appropriate credit to Plaintiff in *Love, Gilda*;

c. Awarding Plaintiff damages for willful copyright infringement in an amount to be proven at trial;

d. Awarding Plaintiff her attorneys' fees and costs; and

e. Providing all other relief in law and in equity that this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues triable by jury.

Dated: October 12, 2018                              Respectfully submitted,

                                                    KATHERINE DANIELS LLC
                                                    *Katherine J. Daniels*
                                                    Katherine J. Daniels
                                                    KATHERINE DANIELS LLC
                                                    60 June Road, Suite 202
                                                    North Salem, NY 10560
                                                    914-886-8198
                                                    kdaniels@katherinedanielsllc.com

                                                    *Counsel for Plaintiffs*