UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------:
HILLARY JOHNSON                                            :
                                                           :
                          Plaintiff                        :
                                                           :    18 Civ. 9337 (VLB) (PED)
         -against-                                         :
                                                           :    **FIRST AMENDED COMPLAINT**
                                                           :
MAGNOLIA PICTURES LLC,                                     :
3 FACES FILMS LLC, MOTTO PICTURES,                         :    Jury Trial Demanded
CNN FILMS, a division of TURNER                            :
BROADCASTING SYSTEMS, INC., and                            :
MICHAEL RADNER                                             :
                                                           :
                          Defendants.                      :
-----------------------------------------------------------:

Hillary Johnson ("Plaintiff") makes this First Amended Complaint against Magnolia Pictures LLC, 3 Faces Films LLC, Motto Pictures and CNN Films and Michael Radner (collectively "Defendants") as follows:

## PARTIES

1. Plaintiff Hillary Johnson is an individual residing at 31 Putnam Road, Hyde Park, NY. 12538.

2. Defendant Magnolia Pictures LLC is a limited liability company organized under the laws of the State of Delaware with offices at 49 West 27th Street, 7th Floor, New York, NY 10001.

3. Defendant 3 Faces Films LLC is a limited liability company organized under the laws of the State of New York with offices at 119 Payson Avenue, Apt. 6C, New York, NY 10034-2717.

4. Defendant Motto Pictures, Inc. is a corporation organized under the laws of the State

1

of New York with offices at 68 Jay Street, Suite 319, Brooklyn, NY 11201.

5. Defendant CNN Films is a division of Cable News Network and Turner Broadcasting Systems, Inc., a corporation organized under the laws of the state of Georgia, with a business address at One CNN Center, 100 International Blvd., Atlanta, GA 30303-2762.

6. On information and belief, Defendant Michael Rader is an individual residing at 5000 Town Ctr., Southfield, MI 48075.

## NATURE OF THE CASE

7. This action arises out of the unauthorized use by the Defendants of audiotape recordings of interviews conducted by Plaintiff of Gilda Radner in the late 1980 (the "Taped Interviews") in the recently released motion picture film entitled *Love, Gilda*.

## JURISDICTION AND VENUE

8. This is a civil action seeking injunctive relief for the infringement of unregistered copyrighted works arising under the copyright laws of the United States, 17 U.S.C. § 101 et seq.

9. This Court has jurisdiction under 17 U.S.C. §101 et seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a), as confirmed by the U.S. Supreme Court in Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) and its progeny.

10. This Court has personal jurisdiction over the Defendants and venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) in that the Defendants conduct business in this District and many of the acts of infringement complained of herein occurred in this District.

## FACTUAL BACKGROUND

11. In the spring of 1987, Simon and Schuster hired Plaintiff to conduct a series of

interviews with Gilda Radner, who was then suffering from ovarian cancer and had a book contract to write about her experience. Plaintiff's task was to draw Radner out and help her organize her thoughts for the book. There were several writers vying for the job and Radner chose Plaintiff.

12. The story behind Plaintiff's interviews of Gilda Radner is recounted in a Rolling Stone article authored by Plaintiff, a copy of which is attached hereto as Exhibit 1. Their conversations resulted in numerous audiotapes (hereinafter the "Taped Interviews"), the result of their once-a-week lunch dates at the Good Earth health food restaurant in the Westwood neighborhood of Los Angeles and later in Connecticut, and an outline for the book.

13. Plaintiff, a professional journalist, invested significant time and effort creating questions for the Taped Interviews and her creativity and skill as an interviewer resulted in material that contributed to the commercial success of Radner's autobiography entitled *It's Always Something,* which was published by Simon & Schuster in 1989.

14. In view of Plaintiff's significant contributions to the Taped Interviews and the intent of Plaintiff and Radner to jointly work together to generate content for Radner's book, Plaintiff is at least a co-owner of the copyrights in and to the Taped Interviews as well as any excerpts or other derivative works making use thereof (hereinafter "Derivative Works").

15. The Taped Interviews are not merely dictations of the initial draft of the manuscript. In fact, they are separate and discrete copyrighted works created to assist Radner in writing the book.

16. In or about the fall of 2016, the Producer of *Love, Gilda*, Lisa D'Apolito, contacted Plaintiff to say she had come across the Taped Interviews in Defendant Michael Radner's attic. D'Apolito was very excited about the prospect of using the Taped Interviews and wanted to do

an interview with Plaintiff.  Recognizing the extraordinary value of the Taped Interviews and her unique expertise as to their creation, Plaintiff asked for a modest sum of money in exchange for her cooperation, but Plaintiff never heard from D'Apolito or anyone else connected with *Love, Gilda* again.

17.   In or about August of 2018, Plaintiff saw a synopsis and trailer for *Love, Gilda* released by the Defendants on the Internet.  The synopsis and trailer make reference to "recently discovered audiotapes" that "open up a unique window" into Gilda Radner "whose greatest role was sharing her story."  Copies of the synopsis and trailer are attached hereto as Exhibit 2.

18. Based on the synopsis and trailer and the call from D'Apolito, it is evident that the "recently discovered audiotapes" were used in the film and that the "recently discovered audiotapes" referenced in the synopsis and trailer for *Love, Gilda* are Plaintiff's Taped Interviews of Gilda Radner.

19. On information and belief, Michael Radner was in physical possession of the Interview Tapes in the fall of 2016 but is not the legal owner of Gilda Radner's copyright rights in the Taped Interviews and, therefore, lacked authority to license the other named Defendants to create Derivative Works and use the Taped Interviews in the film.

20. Alternatively, even if Michael Radner is the legal owner of Gilda Radner's copyrights in the Taped Interviews, he lacked authority retroactively to extinguish Plaintiff's demand to receive compensation for the use of the Taped Interview in the film and Plaintiff's right to prosecute a cause of action for infringement against the other named Defendants for using the Taped Interviews and creating Derivative Works from them without her express written consent.

21. Any license from Defendant Michael Radner is also invalid because, on information and belief, it is not in writing.

22. On August 10, 2018, counsel for Plaintiff wrote to Defendant Magnolia Films notifying them of Plaintiff's ownership interest in the Taped Interviews and demanding that Plaintiff "receive appropriate credit in *Love Gilda*" and "be fairly and reasonably compensated for her undeniable contribution to the film." A copy of the letter is attached hereto as Exhibit 3.

23. On September 4, 2018, counsel for Defendant 3 Faces films LLC responded refusing to provide credit or reasonable compensation to Plaintiff. The condescending, combative tone of counsel's letter made clear it that Defendants had no intention of resolving this matter amicably.

24. On September 21, 2018, *Love, Gilda* was released by the Defendants and significant use was made of excerpts from the Taped Interviews without any credit or compensation to Plaintiff.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

**(All Defendants)**

23. Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

24. Plaintiff is the rightful co-owner of the copyrights in the Taped Interviews and any Derivative Works created therefrom.

25. Plaintiff is unable to register her copyrights in the Taped Interviews and Derivative Works because the Defendants are in possession of the physical tape recordings and have denied Plaintiff access.

26. Plaintiff's inability to access the Taped Interviews and Derivative Works is causing and will continue to cause her irreparable harm by preventing her from exercising her right to sue for copyright infringement.

27. Plaintiff lacks an adequate remedy at law because she is not in possession of the

Taped Interviews and Derivative Works and is, therefore, unable to register her copyrights and prevent future infringement, which future infringement cannot be fully compensated or measured in money.

28. Defendants will not suffer any harm from the entry of an injunction requiring that they give Plaintiffs access to the Taped Interviews and Derivative Works to enable Plaintiff to register her copyrights.

29. The public interest favors the protection of copyrights and therefore favors entry of a permanent injunction in favor of Plaintiff to prevent ongoing infringement.

30. Plaintiff respectfully ask the Court to inter declaratory judgment ordering Defendants to provide her access to the Taped Interviews and Derivative Works.

## SECOND CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT

**(Magnolia Pictures, 3 Faces Films, Motto Pictures and CNN Films))**

31. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

32.  Plaintiff is, and at all relevant times has been, a co-author of the Taped Interviews, each of which is a separate work under the Copyright Act.

33. Under the Copyright Act, co-authors of joint works are co-owners of the copyrights in those works and are generally treated as tenants in common with each co-owner having an independent right to use or license others to use the works, subject to a duty of accounting to the other co-owner(s) for any profits.  However, a co-owner of joint works lacks authority to convey or license the interest of his or her fellow co-owner(s) without their express written consent and also lacks authority retroactively to extinguish a co-owner's demand for compensation and/or eviscerate her right to sue for infringement.

34. After contacting Plaintiff and with full knowledge of her demand for compensation, Defendants, without the permission or consent of Plaintiff, made or caused to be made reproductions of all or significant portions of the Taped Interviews and used them in *Love, Gilda*.

35. Defendants' actions constitute infringement of Plaintiff's rights under the Copyright Act.

35. Defendants efforts to eviscerate Plaintiff's claim for infringement by securing a retroactive license from the other co-owner is invalid.

36. Plaintiff is informed and believes that the foregoing acts of infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiff.

37. As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and her attorneys' fees and costs pursuant to 17 U.S.C. § 505, and a permanent injunction from the Court requiring the defendants to provide her with an appropriate credit for her contribution to the film.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in their favor:

  a. Granting a declaratory judgment requiring Defendants to give Plaintiff access to all of the Taped Interviews and Derivative Works so she can register her copyrights;

  b. Granting a permanent injunction ordering Defendants to provide appropriate credit to Plaintiff in *Love, Gilda*;

  c. Awarding Plaintiff damages for willful copyright infringement in an amount to be proven at trial;

  d. Awarding Plaintiff her attorneys' fees and costs; and

e. Providing all other relief in law and in equity that this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues triable by jury.

Dated: October 12, 2018               Respectfully submitted,

                                                    KATHERINE DANIELS LLC
                                                    *Katherine J. Daniels*

                                                    _____
                                                   Katherine J. Daniels
                                                   KATHERINE DANIELS LLC
                                                   60 June Road, Suite 202
                                                   North Salem, NY 10560
                                                   914-886-8198
                                                   kdaniels@katherinedanielsllc.com

                                                   *Counsel for Plaintiffs*