UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------:
HILLARY JOHNSON                                              :
                                                             :
                             Plaintiff                       :
                                                             :  18 Civ. 9337 (VLB) (PED)
           -against-                                         :
                                                             :
MAGNOLIA PICTURES LLC,                                       :
3 FACES FILMS LLC, MOTTO PICTURES,                           :
CNN FILMS, a division of TURNER                              :
BROADCASTING SYSTEMS, INC., and                              :
MICHAEL RADNER                                               :
                                                             :
                             Defendants.                     :
-------------------------------------------------------------:

# MEMORANDU OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

KATHERINE DANIELS LLC
60 June Road, Suite 202
North Salem, NY 10560
914-886-8198
kdaniels@katherinedanielsllc.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………….. 1

LEGAL STANDARD FOR RECONSIDERATION…………………………………………… 1

ARGUMENT…………………………………………………………………………………… 2

      I.        It Is Manifestly Unjust to Deprive Plaintiff of Her Substantive
               Right to Seek Compensation for the Unauthorized Use of Her Intellectual
               Property…………………………………………………………………………. 2

      II.       The Court's Order Granting Attorneys' Fees and Costs is Manifestly
               Unjust and Undermines the Goals of the Copyright Laws……………………… 6

CONCLUSION………………………………………………………………………………..9

# TABLE OF AUTHORITIES

**CASES**

Cioce v. Cty. Of Westchester, 128 Fed. Appx. 181, 185 (2d Cir. 2005) ......................................2

Complex. Sys. V. ABN AMBRO Bank N.V., 979 F. Supp. 2d 456, 471 (S.D.N.Y. 2013) ...........5

Dodd v. Fort Smith Special Sch. Dist. No. 100, 666 F. Supp. 1278, 1282 (W.D. Ark. 1987)........4

Found. For Lost Boys & Girls of Sudan, Inc. v. Alcon Entm't, LLC, 2016 U.S. Dist. Lexis
    183684 *23 (N.D. Ga. March 22, 2016) ................................................................................4

Fourth Estate Public Benefit Corporation v. Wall-Street.com, 139 S. Ct. 881 (2019)...................6

Gattoni v. Tibi, LLC, 254 F. Supp. 3d 659, 663 (S.D.N.Y. 2017) .................................................5

Jacob v. Duane Reade, Inc., 293 F.R.D. 578, 580-81 (S.D.N.Y. 2013), aff'd, 602 Fed. Appx. 3
    (2d Cir. 2015)..........................................................................................................................1

Merchant v. Levy, 92 F.3d 51, 52 (2d Cir. 1996).........................................................................3

Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) .......................................................2, 3, 6

Ross v. New York, 2016 U.S. Dist. LEXIS 46403, *2-3 (S.D.N.Y. Apr. 6, 2016).........................2

Whistleblower Productions, et al. v. St8cked Media, et al., 18-cv-5258
    (E.D.N.Y. July 15, 2019)........................................................................................................4

**STATUTES**

17 U.S.C. § 408(a) .........................................................................................................................2

17 U.S.C. § 411(a) ......................................................................................................................2, 3

17 U.S.C. § 408(f).........................................................................................................................3

**OTHER AUTHORITIES**

Field, Martha A. (2013) "Removal Reform: A Solution for Federal Question Jurisdiction, Forum Shopping, and Duplicative State-Federal Litigation," *Indiana Law Journal*: Vol. 88 : Iss. 2 , Article 7. ..................................................................................................................................5

**TREATISES**

2 *Nimmer on Copyright* § 7.16(B)(1)(b)(i), n. 44.2 ......................................................................3

## PRELIMINARY STATEMENT

Plaintiff Hillary Johnson, by her attorney, Katherine Daniels LLC, respectfully submits this memorandum of law in support of her motion pursuant to Local Civil Rule 6.3 for reconsideration of this Court's Opinion and Order dated September 16, 2019 (the "Order" (ECF 39), which dismissed all claims by Plaintiff in the First Amended Complaint (the "FAC" (ECF 22) against defendants Magnolia Pictures LLC, 3 Faces Films LLC, Motto Pictures and CNN Films, a division of Turner Broadcasting Systems and the copyright infringement claim against Defendant Michael Radner.  The Order did not address Plaintiff's arguments that the registration requirement should be waived in this case because the only copies of the interview recordings in dispute are in the possession of the Defendants, who refuse to turn them over.  Since the Copyright Act explicitly provides that registration is not a precondition to copyright protection, and the Supreme Court has ruled that federal courts have jurisdiction to adjudicate disputes involving unregistered copyrighted works, the Court appears to have overlooked the fact that Plaintiff is left without any recourse against the irreparable harm she is suffering in the form of ongoing infringement.  Accordingly, reconsideration is warranted.

## LEGAL STANDARD FOR RECONSIDERATION

Motions for reconsideration "are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice." Jacob v. Duane Reade, Inc., 293 F.R.D. 578, 580-81 (S.D.N.Y. 2013) (granting reconsideration in part), aff'd, 602 Fed. Appx. 3 (2d Cir. 2015) (citations omitted).  "Manifest injustice" is shown if "the Court overlook a key fact in the record or a controlling point of law," in which case "[r]econsideration is warranted." Ross v.

New York, 2016 U.S. Dist. LEXIS 46403, *2-3 (S.D.N.Y. Apr. 6, 2016) (granting reconsideration after overlooking statute of limitations argument, citing Cioce v. Cty. Of Westchester, 128 Fed. Appx. 181, 185 (2d Cir. 2005) (reconsideration should be granted if the court overlooked "controlling decisions or data . . . that might reasonably be expected to alter the conclusion reached by the court.")).  This motion satisfies that standard.

## ARGUMENT

### I.   It Is Manifestly Unjust to Deprive Plaintiff of Her Substantive Right to Seek Compensation for the Unauthorized Use of Her Intellectual Property

The Copyright Act explicitly provides that registration is not a precondition to copyright protection, and the Supreme Court has confirmed that, notwithstanding 17 U.S.C. §411(a), the federal courts have jurisdiction over disputes involving unregistered copyrighted works. Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).  The Magnolia Defendants do not dispute these controlling points of law.  Instead they advocated for, and the Court applied, an unnecessarily rigid interpretation of the registration requirement -- an approach that is inconsistent with the Supreme Court's decision in Reed Elsevier and has resulted in a manifest injustice in this case. The Court's failure to even acknowledge in the Order Plaintiff's argument as to why the registration requirement should be waived (at least temporarily) in this case suggests that the argument and its merits were both overlooked.

There is no dispute that 17 U.S.C. § 411(a) generally imposes registration as a precondition to filing a copyright infringement claim.  ECF 39 at 5 (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166 (2010)).  However, it is equally true that the Copyright Act explicitly provides that registration is *not* a precondition to copyright protection. 17 U.S.C. § 408(a).  In disputes involving unregistered works, § 408(a) and § 411(a) must be harmonized.  In

Reed Elsevier, the Supreme Court achieved this by reversing the Second Circuit's decision holding that the federal courts lacked jurisdiction to approve a class action settlement involving unregistered works.  In that case, the Supreme Court, in effect, waived the registration requirement and held that the district court could approve a class-action settlement for the unauthorized use of plaintiffs' articles in electronic databases even though the vast majority of the plaintiffs had never registered the copyrights in their articles.  It was a practical, pragmatic approach that acknowledged the fundamental unfairness of denying relief to the unregistered plaintiffs, who otherwise would have received no remuneration for the widespread and ongoing unauthorized use of their articles in electronic databases.

It is difficult to imagine a set of facts more compelling than the present case for a pragmatic approach, as in Reed Elsevier.  Johnson has alleged, consistent with longstanding journalistic practice, that she is an owner of the copyrights in her interviews with Gilda Radner.  ECF 22 ¶ 14.  The Defendants are in possession of the only copies of those interviews and refuse to turn them over.  As a result, Johnson ***cannot*** register her copyrights and will be unable to do so until this or some other court compels the Defendants to produce them.  In the meantime, she will continue to suffer irreparable harm in the form of ongoing infringement by the Defendants.

Like Reed Elsevier, the facts in this case do not lend themselves to any of the statutory exceptions to § 411(a).  "Preregistration" under § 408(f) is inapplicable and a copyright action seeking a "declaration of ownership" is time barred.  Merchant v. Levy, 92 F.3d 51, 52 (2d Cir. 1996).  Nevertheless, equity demands that the Court find some way to provide relief because unregistered copyrights are undeniably entitled to protection.  See, 2 *Nimmer on Copyright* § 7.16(B)(1)(b)(i), n. 44.2.  In this footnote (also overlooked by the Court), David Nimmer discusses Dodd v. Fort Smith Special Sch. Dist. No. 100, 666 F. Supp. 1278, 1282 (W.D. Ark.

3

1987), a case like this one in which the failure to register stemmed from defendants' retention of the only copy of Plaintiffs' manuscript. Nimmer writes: "Although this case granted plaintiff relief on another basis, query whether a court could have invoked a judicial exception to the registration requirement in these unusual circumstances, analogous to the recordation exception described in § 12.08 infra". Clearly, David Nimmer thinks that a judicial exception on these facts is worth considering.

In Found. For Lost Boys & Girls of Sudan, Inc. v. Alcon Entm't, LLC, 2016 U.S. Dist. Lexis 183684 *23 (N.D. Ga. March 22, 2016), the court took a pragmatic, equitable approach consistent with Reed Elsevier and applied a judicial exception to § 411(a). The court granted Plaintiffs' request for an order compelling the defendants to turn over copies of the taped interviews. The Plaintiffs were then permitted to register their copyrights and refile their infringement claims against the defendants. The court's approach in Lost Boys was reasonable, fair to all parties, consistent with Supreme Court precedent and with the Copyright Act as a whole.

On July 15, 2019, Judge Chen in the Eastern District of New York declined to follow Lost Boys in a another case where the defendants were in possession of the only copy of the allegedly infringed work. Notably, Judge Chen did not find the plaintiffs' argument requesting a waiver of the registration requirement to be unreasonable or frivolous and she squarely addressed it in her opinion. Whistleblower Productions, et al. v. St8cked Media, et al., 18-cv-5258 (E.D.N.Y. July 15, 2019). That case involved a very complex set of facts that are readily distinguishable from the relatively straightforward issues presented here. Most significantly, it was not entirely clear whether the infringement was ongoing and the statute of limitations had

not expired for a declaratory action as to ownership.  Judge Chen felt that the plaintiffs had other avenues for relief.

Here, by contrast, if the Court refuses Johnson's request for an order compelling Defendant Michael Radner to turn over the interviews, her only option is to bring an action in state court.  However, because Michael Radner has raised issues of fact as to Johnson's claim to joint ownership -- defenses that may themselves be time-barred, see Complex. Sys. V. ABN AMBRO Bank N.V., 979 F. Supp. 2d 456, 471 (S.D.N.Y. 2013) -- it is by no means certain that a state court could even take the case because it involves the interpretation and application of the Copyright Act over which federal courts have exclusive jurisdiction.

Furthermore, even if a state court did take the case and Johnson prevailed, she would still need to file a separate lawsuit in federal court to have her infringement claims heard.  By then, the infringement claims themselves would likely be time barred.  Johnson would undoubtedly also be forced to relitigate the ownership issue in federal court, risking inconsistent results.  Forcing a copyright owner to litigate in multiple forums is a waste of judicial resources and is neither fair nor pragmatic -- nor even rational.  Besides, Johnson and most journalists and artists like her could never afford it.  *See,* Field, Martha A. (2013) "Removal Reform: A Solution for Federal Question Jurisdiction, Forum Shopping, and Duplicative State-Federal Litigation," *Indiana Law Journal*: Vol. 88 : Iss. 2 , Article 7.

In closing, it should be noted that none of the cases relied upon by the Court and cited by Judge Sweet in Gattoni v. Tibi, LLC, 254 F. Supp. 3d 659, 663 (S.D.N.Y. 2017) involved similar facts.  In those cases, the plaintiffs were in possession of the works at issue and either did not register them at all, or brought suit while their applications were pending.  The Supreme Court recently resolved a split in the Circuit Courts as to whether § 411(a) permits infringement actions

5

to be filed while applications are pending in the Copyright Office.  The Court ruled that it does not, but did not question the ongoing validity of Reed Elsevier and the possibility of a judicial waiver of the registration requirement in certain cases.  Fourth Estate Public Benefit Corporation v. Wall-Street.com, 139 S. Ct. 881 (2019).  We firmly and reasonably believe that a judicial exception to §411(a) is warranted under the circumstances of this case and we respectfully ask the Court to reconsider its decision.

## II. The Court's Order Granting Attorneys' Fees and Costs is Manifestly Unjust and Undermines the Goals of the Copyright Laws

Hillary Johnson is a highly accomplished journalist.  She has written books and countless articles for well-known publications including *Life* magazine, *Vanity Fair, Rolling Stone, Town & Country*, *The Wall Street Journal's Leisure and Arts* page, *New York* magazine, the *New York Times op-ed page*, *Tatler* (British), *Women's Wear Daily, "W," Vogue, US Weekly, InStyle, Working Woman, Mirabella, Self, Elle, GQ, Discover*, the *Columbia Journalism Review*, *Victoria, Harper's Bazaar, Architectural Digest,* the New York *Daily News Sunday Magazine*, the *Minneapolis Tribune*, the *San Francisco Examiner Sunday Magazine*, the *Christian Science Monitor, Congressional Quarterly* and many other publications.  Most of these articles were celebrity feature stories and in each and every case the interviews were recorded.  Recording interviews is standard practice among journalists who then use them to write their stories.  As experts in the field would have testified in this case, unless otherwise agreed, the copyrights in the interviews belong to the journalist who conducted the interviews and recorded them.  Johnson Decl. ¶ 1.

During the course of her long, distinguished career, Johnson has recorded interviews with and written feature stories about countless celebrities including Harry Reasoner, Sam Dash, McGeorge Bundy, Irwin Shaw, Gore Vidal, E.B. White, photographer Peter Beard, film editor

Dede Allen, Michael and David Halberstam, Malcolm Forbes, Halston (*Life*), Lauren Bacall, Ralph Nader, the Austrian Porsche family, the Parisian heir to the Baccarat crystal dynasty, Victor Borge, Jane Fonda (*Life*), Walter Cronkite (cover story, *Life*), Jerry Falwell (*Life*), Paloma Picasso, Torrie Steele, Jan Stanton Hitchcock, Bill Broyles, Leona Helmsley, filmmaker Bob Benton, Liz Smith, Frances Fitzgerald (journalist), Alice Arlen, (screenwriter), Sherry Lansing (filmmaker), Frederica von Stade (opera star), Jacques D'Amboise, Shaun O'Brien (ballet), Kirk Douglas, David and Leslie Newman (screenwriters), Peter O'Toole, Rutger Hauer, Andrew McCarthy, Aiden Quinn, John Matusak, Kenny Loggins, Lena Olin (Swedish actress), Nicole Miller (designer). Johnson Decl. ¶ 2-3.

In 1985, Johnson was hired as a contributing editor at *Rolling Stone*, one of just two women on the masthead for more than a decade. Her feature stories there included an extensive profile of Hugh Heffner ("Blows Against the Empire"), Cybill Shepherd ("Breaking the Ice"), Kim Basinger, Laura Dern and Molly Ringwald ("Good Golly, Miss Molly"). Johnson Dec. ¶ 4.

In 1987, Johnson wrote a two-part series for *Rolling Stone* on what was being called "chronic Epstein-Barr disease," then an emerging disease. The series was nominated for the 1988 National Magazine Award in the prestigious "reporting" category and was among the five finalists. Johnson Decl. ¶ 5. In March of 1989, the editor at *Rolling Stone* asked Johnson to write a tribute to Gilda Radner upon her death, a piece for which she interviewed numerous celebrities and friends of Gilda. The documentary film maker of "*Love Gilda*", Lisa D'Apolito, told Johnson in an email, "I read your article you did for Rolling Stones (sic) and it was the best that I have ever read about Gilda." And in another email, d'Apolito wrote, "I can tell you really understood her from your Rolling Stone article." Johnson Decl. ¶ 6.

7

In the late 1990s, after completing her award-winning book *Osler's Web* (for which she interviewed approximately 500 doctors, scientists and government policy makers) she continued writing for *Rolling Stone*, this time covering science and medicine.  These stories included the introduction of the then-new anti-retroviral drugs for AIDS; the perpetual threat of influenza virus mutations and the dangers of depleted uranium weaponry employed by the American military in the first Gulf War.  She interviewed many of the top U.S. AIDS scientists and military officials for these stories. Johnson Decl. ¶ 7.

In the present case, Johnson was hired by Simon & Schuster – *precisely because of her deep experience and exquisitely honed skills as an interviewer* -- to draw out and organize the stories that would form the basis of Radner's autobiography.  Johnson also provided Radner with an outline for the book. The agreement with Simon & Schuster required Johnson to keep the subject matter of the interviews confidential due to their highly personal nature, but was silent as to ownership of the recordings.  As with all of her previous interviews, Johnson justifiably views these taped interviews as <u>her</u> work product and has alleged that she and Gilda Radner jointly own them.   Johnson Decl. ¶ 8.

Historically, journalists have struggled to obtain fair compensation.  They are grossly underpaid to begin with, but the advent of the Internet and movies on demand have only made it harder for professional writers to capture the value from infringers who seek to make free use of their work online and in film.  With deep pockets, vast resources and teams of lawyers at their disposal, movie production companies routinely ignore the copyright laws, rendering it virtually impossible for creative people to receive fair compensation for the use of their work. It is manifestly unjust when the rich and powerful in effect to weaponize § 411(a) and use it to avoid having to compensate content providers for their work.

In stark contrast to the Supreme Court's approach in Reed Elsevier, the Court's decision in this case sets an extremely harsh precedent for journalists everywhere because the deprivation of Johnson's substantive rights have been compounded by an award of attorneys' fees and costs – a result that punishes her for taking the only logical course of action available under the circumstances to protect her rights. No other journalist will dare to test this important issue. The lucky ones who are in possession of their interviews will register, but others like Johnson will never be able to do so because the Defendants are in possession of the only copies. CNN stands to profit handsomely from Johnson's work, but she never will.

Today, Johnson suffers from a debilitating illness. As a result, she barely has enough money to sustain herself. She relies on social security disability benefits simply to survive. She is vigilant about protecting her copyrights, because she has every right to be. Johnson's claims in this case were not "opportunistic," "unreasonable" or "frivolous". Johnson Decl. ¶ __. Her taped interviews of Gilda Radner were clearly of great value to the Defendants and Johnson's claims to joint ownership are wholly consistent with longstanding journalistic norms. Awarding attorneys' fees and costs to the alleged infringers in this case was manifestly unreasonable. It does nothing to further the goals of the Copyright Act. To the contrary, it will enable and encourage the wholesale infringement of celebrity interviews, which are typically not registered, and are of great value to any filmmakers who can get their hands on them. Like the unregistered plaintiffs in Reed Elsevier, Johnson was and is entitled to seek compensation for the ongoing infringement of her copyrights in the interviews by the Defendants.

## CONCLUSION

For all of the foregoing reasons, the award of attorney's fees and costs should be vacated. Plaintiff's request for an order compelling the Defendants to turn over the interviews should be

9

granted and Plaintiff should be permitted to refile her copyright infringement claims after her copyrights have been registered.

Dated:  September 30, 2019

Respectfully submitted,

KATHERINE DANIELS LLC

*Katherine J. Daniels*

_____
Katherine J. Daniels
KATHERINE DANIELS LLC
60 June Road, Suite 202
North Salem, NY 10560
914-886-8198
kdaniels@katherinedanielsllc.com

*Counsel for Plaintiff*